IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327 MDL 2327<br><br>JOSEPH R. GOODWIN<br>U.S. DISTRICT JUDGE |
| THIS DOCUMENT RELATES TO:<br><br>*Wanda Bogie v. Ethicon Inc., et. al.* | Case No. 2:13-cv-08674 |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Wanda Bogie, by and through their undersigned counsel, hereby respectfully submit the following Memorandum in Opposition to Defendants, Johnson & Johnson and Ethicon, Inc.'s ("Defendants"), Motion for Summary Judgment. As explained in detail below, Defendants' motion should be denied.

I.  **STATEMENT OF MATERIAL FACTS**[1]

Plaintiff, Wanda Bogie, is an 89-year-old woman who currently resides in Utah. *See* Plaintiff's Fact Sheet, attached hereto as Exhibit "A" at p. 2. On July 25, 2005, Ms. Bogie underwent implantation of Defendant Ethicon's Gynemesh PS and Defendant Boston Scientific's Obtryx transvaginal mesh devices at Sierra Surgery & Imaging in Carson City, Nevada by Dr. Samuel Chacon and Dr. Roland Chen. *Id* at p.5. At the time of her surgery, Ms. Bogie was diagnosed with symptomatic pelvic floor relaxation and stress urinary incontinence. *See* Plaintiff's Medical Records, attached hereto as Exhibit "B", at BOGIEW_SSIMA_MDR00036.

---

[1] The Local Rules of this District do not require numbered paragraphs with admissions or statements of contradiction, so this brief will not go point-by-point through Defendants' Statement of Material Facts. However, Plaintiffs do not adopt or admit Defendants' version of the facts, or waive any right to challenge Defendants' version of the facts.

On July 25, 2005, Dr. Chacon proceeded with implantation of the Gynemesh PS to treat her pelvic organ prolapse and Dr. Chen with implantation of the Obtryx device to treat stress urinary incontinence. *Id* at BOGIEW_SSIMA_MDR00036-0042.

Following her implant surgery, Ms. Bogie developed complications from Defendants' defective transvaginal mesh devices. *See* Exhibit "A", at p. 6. Plaintiff's case specific expert, Dr. Richard Rosenfield, explains that her injuries were caused by the polypropylene mesh products. *See* Expert Report of Richard Rosenfield, M.D., attached hereto as Exhibit "C", at p. 3.

In their present Motion, Defendants move for summary judgment on the following grounds, which Plaintiff opposes:

- Plaintiff's negligence claim (Count I);
- Plaintiff's strict liability failure to warn claim (Count III);
- Plaintiff's strict liability defective design claim (Count V);
- Plaintiff's punitive damages claim (Count XVII); and
- Plaintiff's discovery rule & tolling claim (Count XVIII).

Plaintiff will not be proceeding with the following claims at trial:

- Plaintiff's strict liability manufacturing defect claim (Count II);
- Plaintiff's strict liability defective product claim (Count IV);
- Plaintiff's common law fraud claim (Count VI);
- Plaintiff's fraudulent concealment claim (Count VII);
- Plaintiff's constructive fraud claim (Count VIII);
- Plaintiff's negligent misrepresentation claim (Count IX);
- Plaintiff's negligent infliction of emotional distress claim (Count X);
- Plaintiff's breach of express warranty claim (Count XI);
- Plaintiff's breach of implied warranty claim (Count XII);
- Plaintiff's violation of consumer protection laws claim (Count VIII);
- Plaintiff's gross negligence claim (Count XIV); and
- Plaintiff's unjust enrichment claim (Count XV).

As set forth below, Defendants' motion for summary judgment should be denied with respect to all grounds Plaintiff opposes.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (quoting Rule 56(c), as written at that time). "This burden can be met either by presenting affirmative evidence or by demonstrating that the nonmovant's evidence is insufficient to establish his claim." *Miles v. Bollinger*, 979 F.2d 848 (4th Cir. 1992) (Table), 1992 WL 347635, at *2 (4th Cir. Nov. 25, 1992) (citing *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

When the moving party meets its initial burden, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Rule 56(e), as written at that time).

When reviewing a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the court must "draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party." *Hall v. Boston Scientific Corp.*, No. 2:12-cv-08186, 2015 WL 874760, at *1 (Feb. 27, 2015) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578-88 (1986). Moreover, the court "is required to resolve all

conflicts in favor of the non-moving party." *Savage v. 3M Co.*, No. 4:08:cv-1162, 2010 WL 4000620, at *2 (E.D. Mo. Oct. 12, 2001) (*citing Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.3d 207, 210 (8th Cir. 1976).

### III.  LEGAL ARGUMENT

#### A.  Choice of Law

Plaintiffs agree, based on the decisions of the Court, that Nevada's choice-of-law-rules apply.

Nevada's choice-of-law jurisprudence in tort actions is governed by the most significant relationship test, as provided by the Restatement (Second) of Conflict of Laws § 145. *Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. County of Clark*, 122 Nev. 466 (2006).

Section 145 provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
 (a) the place where the injury occurred,
 (b) the place where the conduct causing the injury occurred,
 (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
 (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971).

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 145 applies to tort actions "unless another, more specific section of the Second Restatement applies to the particular tort." *Gen. Motors Corp.*, 122 Nev. at 473. The Second Restatement specifically addresses personal injury actions in § 146, providing a modified version

4

of the most significant relationship test. Section 146 of the Second Restatement states:

> In an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146.

The Second Restatement defines "personal injury" as "either physical harm or mental disturbance, such as fright and shock, resulting from physical harm or from threatened physical harm or other injury to oneself or to another." *Id*. § 146 cmt. b. Both § 145 and § 146 incorporate the following principles from § 6:

> (a) the needs of the interstate and international systems,(b) the relevant policies of the forum,(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,(d) the protection of justified expectations,(e) the basic policies underlying the particular field of law,(f) certainty, predictability and uniformity of result, and(g) ease in the determination and application of the law to be applied.

Vignola v. Gilman, 854 F.Supp.2d 883, 887 (D. Nev. 2012).

These principles are not intended to be exclusive and no one principle is weighed more heavily than another. Restatement (Second) of Conflict of Laws § 6 (1971).

In <u>Finnerty v. Howmedica Osteonics Corp.</u>, 2016 U.S. Dist. LEXIS 123071, *2 (D. Nev. Sep. 12, 2016), plaintiff, a resident of Nevada, sought medical treatment from an orthopedic oncologist located in California. Plaintiff had cancer in his left leg that required either amputation of the leg or a total knee replacement. Plaintiff opted for the replacement and defendant's modular replacement device was implanted. *Id*. At the time of surgery, plaintiff was "clinically obese." *Id*. The surgery took place in March 2005 and plaintiff had no complications until 2011 – over 6 years later. *Id*. at *2-3. In August 2011, plaintiff started working as a shuttle driver for a car rental company. The job required him to lift luggage, weighing up to 80 pounds, on a repetitive basis. *Id*. at *3. In December 2011, while lifting luggage, plaintiff heard a "pop"

5

in his left knee. During revision surgery, it was discovered that the implanted device had fractured. *Id.* Plaintiff continued to suffer complications and eventually his left leg was amputated.

Plaintiff sued the device manufacturer alleging failure to warn, negligence, strict liability design defect, manufacturing defect, and breach of express and implied warranty. *Id*. Defendant moved for summary judgment on all counts.

Because plaintiff resides in Nevada but underwent implantation of the medical device in California, the parties disputed which state's law applied – but only as to the failure to warn claim. *Id*. at *7. We discuss the impact of that decision below, but we'll focus on the failure to warn claim first.

Nevada adheres to the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws. *Id*. at *8. And under the Restatement, in a case for personal injury the law most typically applied is the law of the state where the injury occurred. *Id*. at *9. That is unless another state has a more significant relationship. In this case, where plaintiff's home state is not the state in which the medical treatment was obtained, the court opted to weigh all of the significant relationship factors. It concluded that many were a push. Such as, Nevada's interest in protecting its citizens and California's interest "in ensuring that surgeries performed within its borders comport with its applicable state laws." *Id*. at *10. Where the court found California had an edge was in its "justified expectation" that its law would be applied to surgeries occurring in California. By contrast, "out-of-state visitors do not have a justifiable expectation that they will bring their state's laws with them when they travel." *Id*. at *11. If Nevada residents could do that, the court would be allowing Nevada law to "usurp other states' legislatures." *Id*. Thus, the court concluded that as to failure to warn, California law applied.

6

While the other factors were essentially neutral in determining whether California or Nevada law should apply to the present case, it came down to the protection of justified expectations and to a lesser degree, certainty, predictability and uniformity of result. Defendants claim that because complications arose while Plaintiff lived in California and was treated in California that California law should apply. *See* Memorandum in Support of Defendants' Motion for Summary Judgement at p. 5. Plaintiff also developed complications while residing in Utah and was treated in Utah but Defendants did not address that. *Id. See also* Exhibit "A" at p.2 and p.8. Nevada has a justified expectation in seeing its law applied where the medical procedure was performed within its jurisdiction. Further, to promote certainty, predictability and uniformity of result, all parties involved would be better off knowing the applicable law is based on where the surgery takes place rather than on where the patient may reside. As in *Finnerty*, these factors weigh more heavily, and Nevada law applies to the Plaintiff's claims.

      **B**.    **Even if California Law Applies, Plaintiff's Claims Survive Defendants' Statute of Limitations Argument as There are Genuine Issues of Material Fact That Can Only Be Resolved By a Jury.**

The personal injury statute of limitations typically begins to run when the elements of that claim are complete—i.e., when the plaintiff's injury occurs. *See, e.g., Fox,* 35 Cal. 4th at *809*. "A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id*. at 808. Mere conclusory statements are insufficient. *Id*.

Plaintiff agrees that California's discovery rule applies to Plaintiff's claims and that "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he limitations

period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry . . . ." *Rivas*, 98 Cal. App. 4th at 225 (internal quotation marks and citations omitted). Plaintiff, as the party relying on the discovery rule to toll the limitations period, bears "the burden of pleading and proving belated discovery," which requires evidence of both the delayed discovery and "the inability to have made earlier discovery despite reasonable diligence." *Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 174–75 (2012) (citations omitted); accord *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1011 (N.D. Cal. 2015).

Defendants rely on the testimony of the Plaintiff to prove that she was aware of a defect in the product as early as 2006. *See* Defendants' Memo in Support of Motion for Summary Judgment pp. 7-10. Plaintiff is 89 years old and her failing memory and lack of awareness of her medical care necessitated her daughter, Trudy Hart, to obtain power of attorney. *See* Deposition of Wanda Bogie, attached hereto as Exhibit "F" at 27:23-28:4. Trudy Hart lives with the Plaintiff in Utah, accompanying her on doctors visits, assisted Plaintiff with acquiring counsel, and filing this claim. *Id* at 26:14-27:4. Ms. Bogie was clear in that she did not know when this occurred. *Id* at 28:12. Often when confused during her deposition, Ms. Bogie would simply respond 'Yes'. *Id* at 20:16-21 and 159:7-9. Ms. Bogie lacks the sophistication to understand the difference between a defect in the product and complications following a surgery and she left such determinations to her healthcare providers. Ms. Bogie trusted her physicians to diagnose and treat her symptoms. *Id* at 85:22-86:3. Ms. Bogie testified that she did not know Dr. Chen diagnosed her with mesh erosion. *Id* at 150:21-151:6 and 175:5-22.

Plaintiff noted in her Fact Sheet and Deposition that Trudy Hart saw an ad concerning mesh which led her to consult her physician, Dr. Felicia Lane, in November 2011. *See* Exhibit "A" at p.6. Dr. Lane first notes mesh erosion and mesh extrusion as the cause of her injuries

during an April 19, 2012 office visit. *See* Plaintiff's Medical Records, attached hereto as Exhibit "D" at 0042. Dr. Lane notes that the mesh erosion *was not seen on prior visits*. *Id.* Ms. Bogie diligently saw multiple healthcare providers in search of a diagnosis and treatment for her causes from her initial surgery up until Dr. Lane's findings on April 19, 2012. *See* Exhibit "A" at p.8.

Plaintiff's claims survive summary judgment because she was unaware as to the potential cause of her injuries until November 2011 and subsequent April 19, 2012 revelation by her attending, Dr. Lane. As such, Defendants' Motion for Summary Judgment should be denied.

### C. Plaintiff's Failure to Warn Claims Survives, as There Are Genuine Issues of Material Fact That Can Only Be Resolved by a Jury.

Even if California law applied in this instance, Defendants' motion must be denied. Dr. Chacon was not adequately warned of the risks associated with the Gynemesh PS device. Before the surgery, Dr. Chacon discussed the risks and benefits that he knew of at the time with Ms. Bogie.

Dr. Chacon testified that he *did not know* what issues related to mesh procedure he was aware of back in 2005 and that his awareness of those issues has evolved over the last 15 years. *See* Deposition of Dr. Samuel Chacon, attached hereto as Exhibit "E" at 71:23-72:2. Defendants' claim that had they advised Dr. Chacon of the risks they knew of in 2005 it would not have affected his informed consent process or his decision to recommend the Gynemesh PS to Ms. Bogie is contradicted by Dr. Chacon's testimony. Dr. Chacon says that if he was told of a lifelong risk of erosion, he would have discussed that with Ms. Bogie prior to her decision to proceed with the implantation. *Id* at 90:4-14. He further states that had he been notified of such a risk, it would have factored into his decision to recommend it to Ms. Bogie. *Id* at 90:16-22. Dr. Chacon testified that he would have consented Ms. Bogie on the risk of a permanent chronic inflammatory reaction leading to permanent pain and that the risk would have factored into his

9

recommendation of the procedure. *Id* at 100:15-101:21. In addition, he stated: "Much like any complication that we learn over time, we try to address that and try to alert our patients that these are complications that we know." *Id* at 116:18-20. Dr. Chacon testified that any literature received, including the FDA warnings concerning mesh, discussing potential complications were used in counseling and consenting patients. *Id* at 23:21-24:6. Accordingly, a fact-finder would need to decide whether the inadequacy of Ethicon's warning to Dr. Chacon was indeed a proximate cause of Ms. Bogie's injuries.

### D. If California Law Applies, Plaintiff Does Not Oppose Defendants' Motion For Summary Judgment on Strict Liability – Defective Design Claim (Count V)

Plaintiff believes Nevada law applies to the instant case. If the Court finds that California law applies, then the Plaintiff does not oppose on her claim for design defect claim.

### IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Honorable Court deny Defendants' Motion for Summary Judgment and enter the proposed Order attached hereto.

Respectfully submitted,

**KLINE & SPECTER, PC**

By: _____
LEE B. BALEFSKY, ESQUIRE
CHRISTINE V. CLARKE, ESQUIRE
*Attorneys for Plaintiffs*

Dated: October 25, 2018